HEARD APRIL TERM, 1876.

## GIBBES *vs.* ELLIOTT.

An order upon the merits,—denying a motion to set aside a verdict and grant a new trial on the ground of surprise and newly-discovered evidence,—involves only questions of fact, and is not appealable to the Supreme Court.

BEFORE REED, J., AT CHARLESTON, NOVEMBER, 1875.

This was an action by Edmund A. Gibbes against Juliet G. Elliott to recover the value of a set of diamond jewelry, alleged in the complaint to belong to the plaintiff and to have been converted by the defendant to her own use and to be of the value of $10,000.

The answer denied each and every allegation of the complaint.

The case was referred to a Referee, by consent, to take testimony. It was tried at May Term, 1875, before the Circuit Judge and a jury, upon the testimony of A. H. Hayden, a jeweler, taken by consent of counsel. He testified that he had carefully examined the jewelry and he estimated their value to be about $5,500; and thereupon the jury, under the instructions of the Court, found for the plaintiff the sum of $5,500.

Judgment was entered for the plaintiff and execution entered thereon but not enforced immediately, as the defendant, at her request, was allowed time to raise the money by a sale of the jewelry.

On the 28th day of July, 1875, a motion was made by the defendant, before the Circuit Judge at Anderson, to be relieved from the judgment "on the ground of mistake, inadvertence and excusable neglect." The motion was denied, and it was ordered that sale, under the execution, be suspended for twenty days.

The defendant's property being advertised for sale under the execution, she, at November Term, 1875, filed a petition to the Court, wherein she stated :

That an action was brought against her in this honorable Court by her nephew, Edmund A. Gibbes, in which he set up title to certain diamonds which had belonged to her family for very many years, and had descended through her mother and eldest sister to her possession, where they have been since about the year 1826.

That upon the trial of the cause she was unable to establish her title to the satisfaction of the jury, in consequence of the absence of witnesses, and being herself absent and prevented from testifying because of sickness.

That she understood the whole controversy to be on the title, and not over the value of the diamonds, as to which she called no witnesses, and upon the testimony of a single witness called by the plaintiff the value was assessed at $5,500 and a verdict rendered for that amount, her counsel not objecting, being under the mistake, as it turns out, that such amount could not differ very much from the true value. If she had been present she would have fallen into the same mistake.

That upon the verdict, a judgment was entered on the 2d day of May, 1875, and execution issued thereon.

The traditions of her family had always given great value to these jewels. She had never had cause to doubt the accuracy of this traditional estimate. She had never heard any particular sum stated as their original cost; nor had she ever known of any appraisement by experts or persons skilled in such things.

Her own effort and desire to defend her possession and establish her title rested on the sentiment that they were a family relic and heirloom. Their marketable value or any supposed sum of money they might be worth or sell for was not considered by her, though she never doubted they were of great value. It was, therefore, that she did not direct her attention or that of her counsel to any investigation as to what they were worth in money or to contradicting the opinion of a single witness of great respectability on that point produced by the plaintiff.

It was the title, not the value, which concerned her, and that being decided against her by the jury, and, by reason of her straightened circumstances, being utterly unable to retain possession and pay for them as a purchaser, she offered them to the plaintiff in satisfaction of his judgment, and, this offer having been refused, she was forced to offer them for sale in open market.

It was then that she first began to learn, to her great amazement and mortification, that there had been a great mistake, and that the family traditions as to the value of the jewels had been a family delusion, and that she was and is in great danger of being its chief victim.

That, in fact, a judgment has been taken against her by *"mistake,"* *"inadvertence,"* *"surprise"* and *"excusable neglect."*

That the best and extreme marketable value of the diamonds—the subject of controversy—does not exceed sixteen hundred dollars, thus inflicting upon her a ruinous loss, unless she may be relieved by the intervention of this honorable Court.

She is advised by her counsel that, by special provision of law, it is made competent for this Court to give relief in just such cases as her own. That her "inadvertence" and "neglect" to investigate and fully prove the marketable value of the jewels was *"excusable"* within the meaning of the law under the circumstances.

"That her mistake as to their value was not only natural, but also, under the circumstances, almost unavoidable."

"Your petitioner further shows unto your Honor that her whole estate has been seized on to satisfy the execution issued under the

aforesaid judgment, and is about to be sold by the Sheriff, inflict-
ing not merely the loss of a fixed sum of money, but inevitable
ruin, unless the same should be restrained by your Honor.

"Wherefore your petitioner prays that said judgment may be re-
opened, to the end that she be allowed to prove the allegations of
this, her petition, and thereby show the mistake in the valuation of
said diamonds and save her from the ruin consequent upon her ex-
cusable neglect, and that, in the meanwhile, that the present levy
by the Sheriff of Charleston County be discharged, and that he be
restrained and enjoined from levying said execution upon her
property or selling the same till the further order of this Court."

The petition was verified by the petitioner and was supported by
the following affidavits:

1st. Of Julius L. Moses, who stated :

That under the instructions of the attorneys of Miss Juliet G.
Elliott he went to New York early in the month of October cur-
rent for the purpose of selling a diamond cross and ear-rings, the
subject matter of the suit between Miss Elliott and Dr. Edmund A.
Gibbes, and that he took these articles with him. That, having
been instructed to use his best efforts to get the highest price for the
jewels, he procured letters and means of introduction. to persons
who, from their position and business, would be best informed as to
their value, and, as a first step, sought to ascertain what they
should bring. That, pursuing this purpose, he submitted them to
Mr. Marsh, the official appraiser of jewels of the United States in
the custom house of New York, and he gave them a careful
examination in every respect and assessed their value at $1,150,
and that they would weigh between twenty-three and twenty-four
carats. That this gentleman, in order to be certain as to the cor-
rectness of his appraisement, then sent deponent to Mr. McClure, of
the house of Tiffany & Co., and both of them concurred in estimat-
ing them about twenty-four carats and assessed their value at
$1,200. Mr. Marsh, the appraiser at the custom house, also
recommended deponent to take the jewels to Mr. Hyman, a dealer
and worker in diamonds, in 16th street, near Broadway, New York.
Deponent went to Mr. Hyman and he calculated the weight of the
diamonds at twenty-three carats and assessed their value at about
fifteen hundred and sixty dollars, and said that he would give that

for them, leaving himself a small margin of profit. This deponent then called upon Messrs. Hessels, Ludeke & Co., whose appraisement had been obtained by Mr. Carrington, and they stated that Mr. Carrington had misunderstood their letter, and that they in fact had appraised the cross at $500, and in their opinion the whole set was worth $1,400, and that they would give this. That, anxious to fulfill his instructions, he was not satisfied with this, but diligently went about New York and sought a purchaser, using for this purpose all the means in his power, and that as an extreme price he got an offer of $1,650, which every dealer in diamonds informed him was more than their value. And this deponent swears that from his own knowledge of and dealing in jewels of this description, and from this experience in New York, he is satisfied that this last named sum is an extreme price, beyond the actual merchantable value of the articles.

That his efforts consumed fifteen days, and, the price offered being so much below the appraisement made here, he reached Charleston a few days ago, bringing back the diamonds unsold.

2d. Of C. H. Simonton, one of the counsel of defendant, who stated :

That he placed the diamonds, a cross and ear-rings, which had been the subject matter of the suit in *Gibbes* vs. *Elliott*, in the hands of Julius L. Moses, Esq., with instructions to take them to New York and to sell them there. That he had endeavored himself to do this before instructing Mr. Moses, but found it beyond his ability. That he employed Mr. Moses because he was a gentleman of character, energy, skill in business and experience in matters of this sort. That the price offered Mr. Moses was a surprise to him, especially as his client had always stated her opinion that they were of great value, and he himself was utterly ignorant of such matters. Had this not been the case he never would have given any assent to the verdict.

The plaintiff filed an affidavit of Mr. Hayden in opposition to the motion, wherein he stated that, in appraising the diamonds in controversy in Gibbes and Elliott, he did so at the joint request of Mr. Ingraham and Colonel Simonton ; that he did not regard himself as the witness or friend of either party ; that he waited upon Miss Elliott by appointment, and she appeared in person and produced the jewels ; that Miss Elliott stated a much higher figure as

the value of the jewels than he did, and stated that this deponent's brother several years previous had rated them at a much higher value. Deponent further states that he has heard read the affidavits of Mr. Julius L. Moses, and finds a great difference in the valuations by the persons consulted, and that the appraisements of dealers are higher than those of officials or experts. That diamonds are things which depend very much upon *fancy* and *means*, and in the last six months diamonds, like other fancy articles, have fallen greatly in value. The demand for such luxuries has greatly diminished. That these are unquestionably a beautiful lot of jewels, and, in his opinion, whoever should purchase them at the highest figure named in the affidavit of Mr. Moses would make a good deal of money out of them. And that he sees no reason to change his valuation, having reference to the times when the appraisement was made and when the verdict was given.

His Honor, on hearing the petition, ordered that it be dismissed.

The petitioner appealed.

*Campbells & Whaley* for the motion:

1. This is an appeal from the order of His Honor Judge Reed, refusing a motion to open a consent verdict and judgment upon the grounds of mistake, inadvertence, surprise and excusable neglect, brought to view and established by after-discovered evidence.

The respondent brought suit to recover possession of family heirlooms intended for female adornment. They were a part of the paraphernalia of his grandmother—a diamond set, consisting of ear-rings and a brooch, in form of a cross,—for many years in possession of his mother's sister, the appellant here.

The trial was forced on in the absence of her witnesses, and while she was sick, and for that reason unable to attend and testify.

The verdict was by consent as to the value of the jewels, under a mistake on her part and of her counsel, and, she believes, of all parties, as to their true value.

She neglected to have the value carefully ascertained, and, under the circumstances, the neglect was excusable. She was misled by the traditions of her family. The mistake was not only natural but also next to unavoidable. For particulars she refers to her

petition, the affidavits of Julius L. Moses, Charles H. Simonton and of A. H. Hayden.

*Points and authorities:*

1. The power and incumbent duty of the Circuit Courts to vacate or set aside judgments and decrees in such cases is ample. Section 2, Chapter CV, of General Statutes is as follows: "In case a judgment or decree has been or hereafter shall be rendered by a Court of Common Pleas, it shall be lawful for either party, plaintiff or defendant, to move before the presiding Judge of the Circuit in which said judgment was obtained to vacate or set aside said judgment, upon satisfactory proof being made to said Judge that said judgment is erroneous and ought to be set aside; and, upon such proof being made, the presiding Judge is hereby authorized to vacate and set aside said judgment and to order a trial *de novo.*" The Code of Procedure, Section 197, also provides that the Court "may, within one year, relieve a party from a judgment taken against him through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding."

2. The case made is within the provisions of the law.

The Courts of New York have gone much further than necessary to relief in this case.—*Pettigrew* vs. *Mayor of N. Y.*, 17 Howard, P. Reps., 492, cited in Freeman on Judgts., 107.

3. Without the special provisions of the statutes referred to, this case is relievable on general principles.

Equity relieves against judgments in cases of mistake, surprise and accident.

" Mistake of fact, whether by the Court or one of the parties, is ground for interposition of Courts of equity to relieve party injured by the mistake."—Freeman on Judgments, § 500*a*, and 1 Bland's Ch., 350.

It is also a power conceded by the common law to all its Courts.

4. The power to relieve in such a case as this is, it is said, in the discretion of the Court. But it is a discretion subject to review.

Such orders, whether granting or refusing the relief, are subject to appeal.—Freeman on Judgments, § 106, and cases there cited.

*Porter & Brawley* and *Connor*, contra:

The complaint in this action, filed January 12, 1872, claimed $10,000 damages for the unlawful conversion by defendant to her

own use of certain diamonds, the property of the plaintiff. It was a purely legal demand for money, whereby the defendant was fully advised that plaintiff sought not the specific delivery of personal property, but damages for its detention. Upon this issue was joined, both parties being represented by counsel, and, on the 2d of May, 1875, a verdict for the plaintiff was rendered. No motion for a new trial was made, and, on October 28, 1875, after the property of defendant had been sold, this petition is filed, and it is sought to have the judgment reopened on the ground of mistake, etc.

The application is under Section 197 of the Code, which provides as follows: "The Court may likewise, in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited by this Act, or, by an order, enlarge such time; and may also in its discretion and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding."

FIRST PROPOSITION.—Section 197 of the Code is intended for the relief of parties in those cases only where, by reason of mistake, surprise, etc., they fail to be represented at the trial, and can have no application in a case where a party regularly appeared by attorney and defended.

"If they were represented at the trial, they can only obtain relief by an application made in conformity with the rules of procedure provided by law in reference *to new trials*. If they were not at the trial, or were not represented there on account of some mistake, or excusable neglect, then their remedy is not by application for a new trial, but by an application addressed to the discretion of the Court, and made under the Statutes," etc.—Freeman on Judgments, Chapter VII, § 105.

In the recent case of Ex parte *G. W. Williams et al.*, in re *F. Campbell* vs. *County of Charleston*, this Court has recognized the true intent and meaning of this Section. It says, speaking of the cases then before the Court: "It is clear from the record in these cases that there was neither 'mistake, inadvertence or excusable neglect;' all the parties to the action were properly represented, *hence* Section 197 of the Code has no application to them."

This decision seems conclusive of the case before the Court. If it were an open question, reason and public policy alike require that it should be settled as it has been. Otherwise parties having two or more grounds of defense could make only one at the trial, trusting to the chance of reopening the judgment in case of an adverse decision and being let in then to make another defense; and judgments, instead of being, as they have been always regarded in this State, inviolate and enduring testimonials, would be mere "temporary structures, to be torn down, remodeled or rebuilt whenever the builders feel competent to improve the original workmanship and design."

SECOND PROPOSITION.—If it were conceded that the Court below had the power, under the circumstances, to grant the relief prayed for, such relief could not be claimed as matter of right, but of favor, to be granted or withheld in the discretion of the Court, and that Court, having, in the exercise of its discretion, refused it, that decision is not reviewable in the Supreme Court.

This proposition is sustained by the following authorities: *Hazleton* vs. *Wakeman*, 3 How., 547; *Wakeman* vs. *Price*, 3 Comstock, 334; *Buffalo Savings Bank* vs. *Newton*, 23 N. Y., 160; *Depew* vs. *Dewey*, 56 N. Y., 657.

By the very terms of the Act this is a motion within the "discretion" of the Court below. A matter of discretion never goes to the final Court; it begins and ends in the Circuit Court. It is thus expressly decided in *Bolton* vs. *McKinly*, 22 Ill., 203.

In New York, it is true, there is an appeal from the special to the general term, but none to the final Court of Appeals. By our law this discretion is lodged exclusively in the Circuit Judge. It is a part of the general scheme of our jurisprudence, wherein the Judge, not being allowed on the trial of a cause to express any opinion on the facts, or to commit himself to any view thereof, is supposed to have a mind unbiased by any preconceived or previously expressed opinions, and, therefore, is the better able to render an impartial judgment whenever a verdict of a jury is before him for review. Whether or not this is the wisest and best provision is a matter for the consideration of the Legislature, and not for discussion here.

The Circuit Judge having twice refused this motion, it is respectfully submitted that this Court has no jurisdiction in the premises.

THIRD PROPOSITION.—This being "a Court for the correction of errors at law," it has no revisory power in cases of a purely legal nature, unless it is shown that the Circuit Judge has erred in some matter of law, and the petitioner does not point out any such error.

The petitioner's case is simply this: The jury, taking the testimony of Mr. Hayden, an expert, and a man of integrity and good judgment, well known to them and to the Judge who tried the cause, has found that the diamonds were worth $5,500. The defendant, who had had them in her possession for years, speculating upon the chances that they were worth more, took no exceptions and made no motion for a new trial. Months after the trial, when she discovers that she has made a bad bargain, she repents of it, and, being unable, owing to the financial stringency, to sell them for $5,500, she asks to be allowed now to offer her proofs, which she might have offered at the trial. It is doubtful, even if it were in, whether a jury would allow it to countervail the testimony of Mr. Hayden, who was a witness of such character and competency that both parties agreed to rest the case upon his testimony alone. No question of law is involved; it is simply a question of fact of the value of the diamonds. A jury has already passed upon it, and the Judge is satisfied with the verdict. Our own cases are so numerous, and so recent, to the effect that no appeal lies to the Supreme Court to review the findings of fact in a judgment of the Circuit Court in cases of money demand of a purely legal nature that it is unnecessary to do more than refer to them.—*Byrd* vs. *State*, 2 S. C., 388; *Sullivan* vs. *Thomas*, 3 *id.*, 531; *Whaley* vs. *Bank of Charleston*, 5 *id.*; 201.

FOURTH PROPOSITION.—If petitioner had any case or right to appeal, it has been lost through her failure to appeal from the order of July 28th, 1875, which was duly entered in the Clerk's office on 31st July, 1875, whereby the Circuit Judge refused to grant precisely the same motion which was subsequently made and refused in November following.

No Court should sanction a practice whereby a party should be twice permitted to make the same question before the same tribunal, any more than it should permit a party who has once had an opportunity to have his cause fairly and fully tried and has neglected to do so to avail himself of his own negligence in order to set aside a judgment which ought to be held conclusive, not only of all facts actually tried, but of all which could have been tried.

July 12, 1876. The opinion of the Court was delivered by ·

WILLARD, A. J.   A motion was made before the Circuit Court to set aside a judgment and verdict on the grounds of mistake, inadvertence, surprise and excusable neglect, which was denied by the Court, and, on appeal, is brought to this Court.

Defendant alleges that a mistake was made as to the value of diamond jewelry in controversy, and that a verdict was allowed to be taken by consent for a sum supposed to represent the value of the property, and which has since been discovered to be greatly in excess of its true value.   It is alleged that the verdict is a consent verdict and relief is asked on the ground that such a verdict can only be regarded as the contract of the parties, and, as such, relief may be had of an equitable nature as in case of mutual mistake. The record does not, however, support the statement that the verdict is a consent verdict.   A verdict by consent, properly speaking, is the act of the parties and not the proper act of the jury.   In the present case, the understanding of the parties appears to have related to the character of the evidence to be submitted to the jury alone.   The verdict appears to have been taken in ordinary course on the evidence submitted under the arrangement of counsel.

The motion cannot be regarded in any other light than as one for a new trial upon the ground of newly-discovered evidence.   At the trial the defendant supposed that she was unable to procure testimony that would have the effect to reduce the verdict, believing the value of the property to be correctly represented by the agreed testimony.   She now discovers that she can obtain testimony that ought to reduce the verdict.

But whether the motion below is to be considered as grounded on the fact of newly-discovered evidence or upon surprise, the result is the same as affected by the jurisdiction of this Court in such cases.

The Circuit Court has, by statute, authority to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the Courts of law of the United States.—Gen. Stat., 497, § 4.

Relief is granted in the Courts of law of original jurisdiction of the United States in cases of surprise and of newly-discovered evidence.—Abbott's U. S. Practice, vol. 2, 198.   Such motions are addressed to the sound discretion of the Court, and are granted or

denied, not as matters of strict right, but as the substantial justice of the case may appear to require.—*Ibid*, 197.   The constitutional authority of this Court, as it regards cases of legal cognizance, that is, of such as are properly cognizable in Courts of law as distinguishable from Courts of equity, is conferred by the declaration that the Supreme Court "shall constitute a Court for the correction of errors at law under such regulations as the General Assembly may by law prescribe."—Const., Art. IV, § 4; see *Sullivan* vs. *Thomas*, 3 S. C., 531.

This jurisdiction has been in part defined by Section 11 of the Code of Procedure, as amended November 25, 1873.—15 Stat., 495.

This Section now reads as follows:

"The Supreme Court shall have exclusive jurisdiction to review on appeal:

"1. Any intermediate judgment, order or decree involving the merits in actions commenced in the Courts of Common Pleas and General Sessions, brought there by original process or removed there from any inferior Courts or jurisdiction, and final judgments in such actions: *Provided*, If no appeal shall be taken until final judgment is entered.   The Court may, upon appeal from such final judgment, review any intermediate order or decree necessarily affecting the judgment not before appealed from.

"2. An order affecting a substantial right made in an action where such order in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action, and when such order grants or refuses a new trial, or when such order strikes out an answer, or any part thereof, or any pleading in an action; but no appeal to the Supreme Court from an order granting a new trial on a case made on a bill of exceptions shall be effectual for any purpose, unless the notice of appeal contain an assent on the part of the appellant that if the order be affirmed judgment absolute shall be rendered against the appellant, etc.

"3. A final order affecting a substantial right, made in a special proceeding or upon a summary application in action, after judgment, and upon such appeal to review any intermediate order involving the merits and necessarily affecting the order appealed from."

The appeals allowed by subdivisions 1 and 2 are those arising in the course of actions, and are intended to affect the final judgment of the Court in such actions.   Subdivision 3 covers two cases: first, appeals from orders in special proceedings, which are defined by the Code as being every remedy other·than the ordinary proceeding in a Court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of. a public offense, (Code, § 2); and, second, appeals from orders made in summary applications in an action after judgment.   In the last named class of cases the object of the proceeding is not to disturb or to affect the judgment, but to give it efficiency.   In other words, the summary applications referred to are proceedings based upon the judgment and assuming its correctness.   (See opinion Selden, J., in *Selden* vs. *Canal Company*, 29 N. Y., 637.)   It therefore appears that if the object of a motion is to affect a judgment by setting it aside, reversing or modifying it, either directly or indirectly, by affecting the verdict upon which it was rendered, the appeal must be authorized by the provisions of the first or second subdivisions of Section 11, as amended.

Subdivision second authorizes such an appeal as that before us in express terms, as it is an appeal from an order refusing a new trial. But we can only set aside the order on the ground that error of law has been committed by the Circuit Court.   The action was one of legal cognizance alone, and involved no cause of action or defense proper for the consideration of a Court of equitable jurisdiction. We are, therefore, confined by the terms of the Constitution to reviewing the decision of the Court on the matters of law before it and cannot set the order aside on the ground that the Court did not give due weight to the matters of fact presented by the motion. We do not find that any error of law was committed.   The Court entertained the motion and looked into the questions of fact presented.   Had the motion been denied on the ground that the Court had no authority in cases of that class, we might have set such conclusion aside and sent the case back to enable the Circuit Court to pass upon the facts involved.   The questions upon such a motion are, whether the facts of which the party alleges that he has made recent discovery are new and material to the case, and whether the application is in good faith and the party making it has used due diligence both in preparing his case originally and in making his appli-

cation after the discovery of the testimony. (See Abbott's U. S. P., v. 2, p. 198.)˙ These are purely questions of fact. By their aid the Court inquires whether substantial justice has been done to the parties, upon which the conclusion of the Court ought to rest. From such an inquiry we are shut out in cases at law by the nature of our constitutional jurisdiction.

It was held in *Selden* vs. *Canal Co.*, (29 N. Y., 637,) that the Court of Appeals of New York could not review an order denying a motion to set aside a verdict on the ground of surprise. And in *Scoville* vs. *Landon*, (50 N. Y., 686,) it was held that an order refusing a motion for a new trial on the ground of newly-discovered evidence was not appealable to the Court of Appeals. The Court of Appeals, is like this Court, a Court for the correction of errors at law, and the application of the rules of the Code of Procedure to the jurisdiction of that Court ought to yield the same results as the application of our Code to the jurisdiction of the Supreme Court.—See Abbotts'.U. S. Prac., 228.

The record before us presents no ground upon which we are authorized to disturb the order of the Circuit Court, and the appeal should be dismissed.

*Moses*, C. J., and *Wright*, A. J., concurred.